UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

FRANCISCO J. ROSARIO,

        Petitioner,

  -v-                                  No. 17-CR-0027-LTS
                                       No. 18-CV-9066-LTS

UNITED STATES OF AMERICA,

        Respondent.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

        Petitioner Francisco Rosario ("Petitioner" or "Rosario") was convicted, upon a guilty plea, of committing wire fraud in violation of 18 U.S.C. § 1343 and received a custodial sentence of 72 months of imprisonment. (Docket Entry No. 42.) Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that he received ineffective assistance of counsel and that his plea was not knowing and voluntary because he was not provided with Spanish interpretation services. (Docket Entry Nos. 45 and 51.) Petitioner also moves for "an order suppressing all statements made by Mr. Rosario to the Federal Bureau of Investigation." (Docket Entry No. 77.) The Court has jurisdiction of the motions pursuant to 28 U.S.C. § 1331.

        The Court has considered carefully the parties' submissions and, for the following reasons, the Petitioner's motions are denied in their entirety.

## B<small>ACKGROUND

The following factual summary is drawn from the record of the prosecution and sentencing in the above-captioned case, and the parties' submissions in connection with this motion practice.

Francisco Rosario is currently serving a 72-month sentence for committing wire fraud.  Mr. Rosario pled guilty to fraudulently inducing two individuals (a husband and wife) to purchase antique, collectible Chinese railroad bond certificates by falsely representing that the certificates were interest-bearing financial instruments from which the individuals could expect returns of $5,000 per month.  (Presentence Investigation Report ("PSR"), Docket Entry No. 34, at ¶¶ 9-31.)  In reality, the certificates had no value other than as collector's items.  Mr. Rosario fraudulently induced the victims to invest over $780,000—nearly 80 percent of a $989,111.65 medical malpractice settlement award—in the collectible bonds.  (<u>Id.</u> at ¶¶ 15-16, 29.)  In support of his motion to vacate, Mr. Rosario has proffered various "business records relevant to his dealings with the alleged victims," all of which are in English.  (Docket Entry No. 48, Exs. A-F.)

Following his arrest on November 16, 2016, Mr. Rosario was interrogated by two special agents with the Federal Bureau of Investigation ("FBI").  The Government has proffered a copy of the interrogation video in connection with its opposition to Petitioner's motion. (Docket Entry No. 69.)  The beginning of the video shows Mr. Rosario acknowledging, both orally and in writing, his <u>Miranda</u> rights; Mr. Rosario reads a portion of the acknowledgment form aloud in English.  Mr. Rosario speaks English throughout the entirety of the interrogation, and he uses sophisticated financial terms and phrases such as "security instruments" and "collateralize their balance sheet."  He never indicates any difficulty understanding the special agents, nor do the agents indicate any difficulty understanding him.  Further, Mr. Rosario

informs the agents that he is a United States citizen, and that he has been in the United States since he was 12 or 13 years old.

Before pleading guilty, Mr. Rosario attended four separate court proceedings in connection with his criminal case. The transcripts of those proceedings show that Mr. Rosario did not request an interpreter at any time and, on at least one occasion, he engaged in a colloquy with the Court in English without indicating any difficulty in understanding the questions or the proceeding. In a written response to interrogatories propounded by Petitioner's counsel in connection with this proceeding, Telesforo Del Valle, Mr. Rosario's counsel in the underlying criminal case, represents that he "asked Mr. Rosario if he wished to use an interpreter for each one of our court appearances." (Docket Entry No. 76 at ¶ 3.) Mr. Del Valle proffers by affidavit that Mr. Rosario told him that he "understood and spoke English," and that he insisted that "he did not need [an interpreter] because he understood English." (Affidavit of Telesforo Del Valle ("Del Valle Aff."), Case No. 18-CV-09066, Docket Entry No. 15 at ¶¶ 7, 9.) Mr. Del Valle also proffers that "at no time did [he] ever tell Mr. Francisco Rosario that an interpreter was not necessary," and that he "never denied Mr. Francisco Rosario access to a Spanish Interpreter throughout the entire time that [he] represented him in this matter." (Del Valle Aff. at ¶¶ 6, 8.)

On April 27, 2017, Mr. Rosario pleaded guilty before Magistrate Judge Fox to one count of wire fraud. The transcript shows that, during the plea proceedings, Mr. Rosario further demonstrated his facility with the English language. Judge Fox and Mr. Rosario engaged in a lengthy exchange in English and, as with all other prior proceedings, Mr. Rosario never indicated that he could not understand. Mr. Rosario stated that he had taken "a lot of" advanced business courses in the United States. (Plea Hearing Transcript ("Plea Hr'g Tr."), Docket Entry No. 24, at 5.) Petitioner also represented under oath that he understood and accepted his signed

plea agreement. (Plea Hr'g Tr. at 12-14.) Mr. Del Valle states in his interrogatory responses that he had "personally translated the plea agreement for Mr. Francisco Rosario from English to Spanish." (Docket Entry No. 76 at ¶ 6.) Mr. Rosario testified at the plea hearing that his plea was "made voluntarily . . . [and] of [his] own freewill." (Plea Hr'g Tr. at 14-15.)

During the plea hearing, Mr. Rosario outlined, in his own words, the acts that made him guilty of wire fraud. (Plea Hr'g Tr. at 15-16.) Judge Fox attempted to clarify whether Mr. Rosario "intend[ed] . . . to defraud others[,]" and Mr. Rosario responded: "No." (Plea Hr'g Tr. at 16.) The plea hearing transcript indicates that Mr. Del Valle then requested and received an opportunity to speak with Mr. Rosario. (Id. at 16.) Mr. Del Valle states in his interrogatory responses that, during this attorney-client conversation, he "asked Mr. Rosario [in Spanish] if he had changed his mind and did not want to plea [sic] guilty." (Docket Entry No. 76 at ¶ 4.) Mr. Del Valle informed Mr. Rosario that "in order for his plea of guilty to be accepted he would have to admit his guilt to defrauding another individual, and that if he did not want to admit this, then he had the right to proceed to trial at a later date." (Id.) Mr. Rosario told Mr. Del Valle that he "still wanted to plea [sic] guilty," and then admitted under oath that he did, in fact, intend to defraud the victims of his crime. (Docket Entry No. 76 at ¶ 4; Plea Hr'g Tr. at 16-17.)

On September 28, 2017, the Court held the sentencing. (Sentencing Hearing Transcript ("Sent. Hr'g Tr."), Docket Entry No. 39.) At the beginning of the hearing, the Court asked Mr. Rosario whether he "need[ed] to use the interpreter's service." (Sent. Hr'g Tr. at 3.) Mr. Rosario informed the Court that he did not require an interpreter and that he "[could] understand English." (Id.) Despite Mr. Rosario's representations, a Spanish-language interpreter remained in the courtroom and interpreted "throughout the proceeding." (Id.)

When Mr. Rosario was invited to make sentencing remarks on his own behalf, he stated that he "never sold . . . the bonds [at issue,]" and that the bonds "[were] only used for collateralizing commodities transactions in the world." (Sent. Hr'g Tr. at 29.) Noting that "[t]his [was] the first time [the Court] ha[d] ever seen or heard any story about [Mr. Rosario] having told [the victims] anything other than these bonds were worth $250,000 and were a sure, no-lose arrangement," the Court requested further context for Mr. Rosario's statements. (Sent. Hr'g Tr. at 30.) Mr. Del Valle stated that Mr. Rosario had "acknowledge[d] that [the bonds] [were] essentially collectibles, essentially museum pieces . . . that they ha[d] no value; that you can't go and sell these bonds or trade them." (Sent. Hr'g Tr. at 31.) Mr. Del Valle stated that Mr. Rosario nonetheless "took [the] bonds . . . and he indicated to the victims here . . . that these bonds had a value, as he puts it, a value for purposes of investing in foreign investments. And of course that is not true. And he convinced [the victims] . . . to give him . . . a large sum of [the] money, if not all, that they had received from [their medical malpractice] settlement." (Sent. Hr'g Tr. at 31.) Mr. Del Valle's explanation was translated into Spanish by the court interpreter, and Mr. Rosario did not protest or attempt to correct any of Mr. Del Valle's representations. The Court sentenced Mr. Rosario to 72 months of imprisonment and a three-year supervised release term. (Sent. Hr'g Tr. at 40.) Mr. Rosario was also ordered to pay restitution in the amount of $700,000. (Sent. Hr'g Tr. at 41.)

In support of his Section 2255 motion, Mr. Rosario tendered a "linguistic ability report" authored by Dr. Robert A. Leonard. ("Leonard Report," Docket Entry No. 85.) Dr. Leonard analyzed the Government's video of Mr. Rosario's post-arrest interrogation and the transcript of Mr. Rosario's plea proceedings and proffers the conclusions that Mr. Rosario "is not a native speaker of English, does not command native-speaker ability in English, and would not

be taken by native speakers of English to be a native speaker of English."  (Leonard Report at

13.)  Notably, Dr. Leonard did not conclude that Mr. Rosario could not understand English, nor

did he conclude that Mr. Rosario did not understand the plea proceedings.  (See Leonard Report.)

DISCUSSION

Petitioner's Motion to Suppress

   Petitioner moves to suppress[1] "all statements made by Mr. Rosario to the Federal

Bureau of Investigation."  (Docket Entry No. 77.)  Mr. Rosario argues that such statements

should be suppressed because "the FBI agents [who interviewed Rosario] violated the Fifth

Amendment by coercing Mr. Rosario into making statements involuntarily and in a

fundamentally unfair manner."  (Docket Entry No. 79 at 1.)  However, Petitioner makes only

conclusory arguments that his Miranda rights were violated and offers no factual or legal basis

for suppressing the statements in this Section 2255 proceeding.  The video footage of the

interrogation shows the FBI agents administering Miranda warnings both orally and in writing

before any questioning began.  In any event, the Government does not rely on the interrogation

video for purposes of establishing Mr. Rosario's guilt; rather, the Government offers the video as

a demonstration of Mr. Rosario's English-language capability.  (Docket Entry No. 82 at 2.)  Mr.

Rosario does not challenge the authenticity of the video.  For these reasons, Mr. Rosario's

motion to suppress the statements recorded on the video is denied.

Petitioner's Request for an Evidentiary Hearing

   The Court now turns to Petitioner's request for an evidentiary hearing.  The Court

should grant a hearing on a petitioner's motion to vacate "[u]nless the motion and the files and

---

[1]   The Court understands Petitioner's reference to "suppression" as a request to exclude the
video from consideration in the context of this Section 2255 proceeding.

records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.S. § 2255(b) (LexisNexis 2013). This determination is left to the Court's discretion. Pham v. U.S., 317 F.3d 178, 184 (2d Cir. 2003). To obtain a hearing, "a petitioner must demonstrate a colorable claim, and the court must evaluate whether a hearing would offer any reasonable chance of altering its view of the facts." Anim v. U.S., 2013 WL 4056211, at *4 (S.D.N.Y. Aug. 12, 2013) (internal quotations omitted). In making this determination, the Court need not credit "conclusory allegations" or "contentions that in the face of the record are wholly incredible." Gonzalez v. U.S., 722 F.3d 118, 131 (2d Cir. 2013) (internal quotation marks omitted); see also Chang v. U.S., 250 F.3d 79, 84-85 (2d Cir. 2001) (denying evidentiary hearing where petitioner's "proffer involved a generic claim . . . based solely on his own highly self-serving and improbable assertions.")

In lieu of holding an evidentiary hearing, the Court may consider the "trial record, letters, documents, exhibits, affidavits and written interrogatories" and may adopt a "middle road" approach, declining to hold a hearing and "deciding disputed facts on the basis of written submissions." Pham, 317 F.3d at 184. Further, the Second Circuit has held that, "when the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." Puglisi v. U.S., 586 F.3d 209, 214 (2d Cir. 2009).

Here, the Court has considered abundant evidentiary materials in determining whether Mr. Rosario is entitled to a hearing. The Court has considered (i) a sworn affidavit from Mr. Rosario himself which, among other things, states that he speaks English, (ii) four affidavits from Angel Castro, his counsel in these proceedings, (iii) an affidavit from Special Agent

Brandon Racz, (iv) a video of Mr. Rosario's post-arrest interrogation with the FBI, (v) an affidavit and interrogatory responses from Mr. Rosario's trial counsel, Mr. Del Valle, (vi) a linguistic expert report, and (vii) the entire record of the underlying criminal case. The undersigned presided over the underlying criminal proceedings.

Based on its review of these materials, the Court is persuaded that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.S. § 2255(b) (LexisNexis 2013). Mr. Rosario and his trial counsel, Mr. Del Valle, have submitted written testimony in connection with Mr. Rosario's motion. As such, there is no "reasonable chance" that allowing or requiring additional, in-person testimony would alter the Court's view of the facts relevant to Petitioner's motion. Here, the most persuasive evidence comes from the underlying criminal proceedings, which were not manufactured for purposes of this Section 2255 proceeding. The records of those proceedings, especially when viewed in light of the video and Mr. Rosario's acknowledgment of his language capability, are more than enough to allow the Court to evaluate whether Mr. Rosario's facility with the English language was sufficient to enable him to participate meaningfully in the proceedings and make knowing and voluntary decisions in connection therewith. Accordingly, an evidentiary hearing is not warranted in this case and Mr. Rosario's request for one is denied.

Petitioner's 2255 Motion

The Court now turns to the merits of Mr. Rosario's Section 2255 motion. A petitioner may prevail on a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. Section 2255 if he can show that his sentence (i) was imposed in violation of the Constitution or the laws of the United States; (ii) was entered by a court without jurisdiction to impose the sentence; (iii) exceeded the maximum detention authorized by law; or (iv) is

otherwise subject to collateral attack. The grounds for relief under Section 2255 are limited, out of "respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." U.S. v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks and citation omitted). Petitioner must show by a preponderance of the evidence that he is entitled to relief. Cruz v. U.S., 2007 WL 541698, at *2 (S.D.N.Y. Feb. 20, 2007).

Petitioner's motion raises two principal arguments: (i) that he received ineffective assistance of counsel because Mr. Del Valle failed to request a Spanish interpreter and (ii) that, as a result, his guilty plea was not made knowingly and voluntarily.

*Petitioner's Ineffective Assistance of Counsel Claim*

To prevail on an ineffective assistance of counsel claim, Petitioner must show that (i) counsel's performance was deficient under an objective standard of reasonableness, and (ii) Petitioner was prejudiced as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 688-94 (1984). In determining whether counsel's performance was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the challenger's burden is to show that the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-89. That is, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." U.S. v. Brown, 623 F.3d 104, 112 (2d Cir. 2010). To satisfy the second prong of the Strickland test, Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

In the context of alleged ineffective assistance of counsel rendered in connection with a plea, "[t]he second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process . . . . [T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). And, where a petitioner asserts that he would not have pleaded guilty and would have insisted on going to trial, he must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Petitioner asserts that "[a] reasonable attorney in the Plea Attorney's position would have requested an interpreter," and that "[t]he lack of interpreter has prejudiced the Defendant." (Docket Entry No. 46 at 19.) Petitioner has failed to demonstrate that his counsel's performance was deficient under an objective standard of reasonableness. The objective evidence in the record clearly shows that Mr. Rosario understood English and did not require the assistance of a Spanish-language interpreter. The proffers made by Mr. Del Valle confirm this, and demonstrate that Mr. Rosario was also afforded advice and the opportunity to communicate with Mr. Del Valle in Spanish. Indeed, this conclusion finds support from Petitioner's linguistic expert who, after examining the transcript of the allegedly problematic plea hearing, was unable to conclude that Mr. Rosario did not understand the proceedings. The fact that English is Mr. Rosario's second language is not determinative of whether he understood the language at a level sufficient to understand the consequences of his guilty plea. Mr. Rosario's candid statements about his ability to understand English made contemporaneously with the proceedings at issue are inherently more reliable than the self-serving statements he offers now, which are made after-

the-fact. Moreover, it was reasonable for Mr. Del Valle to conclude that Mr. Rosario did not require an interpreter because Mr. Rosario told him he did not require an interpreter. Thus, Petitioner has failed to satisfy the first prong of the Strickland standard.

Petitioner also cannot demonstrate any way in which he was prejudiced by his counsel's allegedly deficient performance. Petitioner does not argue that, but for Mr. Del Valle's errors, he "would not have pleaded guilty and would have insisted on going to trial," nor does he argue that doing so "would have been rational under the circumstances." Hill, 474 U.S. at 58-59; Padilla, 559 U.S.at 372. Absent such assertions, Petitioner cannot demonstrate that he was prejudiced by ineffective assistance of counsel in connection with his decision to plead guilty.

Because Petitioner has failed to state a claim of ineffective assistance of counsel, the Court need not address Petitioner's vague and unsupported references to the quality of the Government's evidence in the underlying criminal proceedings.

### *Petitioner's Claim that His Plea was Not Knowing and Voluntary*

For the same reasons that Petitioner cannot demonstrate that Mr. Del Valle's failure to request an interpreter constitutes ineffective assistance of counsel, Petitioner's claim that his plea was unknowing and involuntary also fails. "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). Because Mr. Rosario understood English, and was advised of and acknowledged the consequences of his plea, he necessarily understood the consequences of his plea, and his argument that his plea was not voluntary and knowing must fail.

<u>CONCLUSION</u>

Petitioner's motion pursuant to 28 U.S.C. Section 2255 and his motion to suppress are denied in their entirety. Because the record is sufficient to enable the Court to make the necessary factual determinations and Petitioner has not raised meritorious claims, the Court also denies Petitioner's request for an evidentiary hearing. The Government is directed to lodge a copy of the interrogation video with the Clerk of Court or, if it wishes to file the video under seal, to make the appropriate application. Mr. Del Valle is directed to file a copy of his affidavit dated February 6, 2019, on the docket in the underlying criminal case (Case No. 17-CR-27).

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C.S. § 2253(c)(1) (LexisNexis 2008). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.S. § 2253(c)(2) (LexisNexis 2008); see generally U.S. v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). The Court finds that Petitioner will not be able to sustain this burden and, therefore, declines to issue a certificate of appealability.

This Memorandum Order resolves docket entry nos. 45, 51, and 77 in 17-CR-27. The Clerk of Court is respectfully directed to close case no. 18-CV-9066.

SO ORDERED.

Dated: New York, New York
October 17, 2019

  /s/ Laura Taylor Swain  
LAURA TAYLOR SWAIN
United States District Judge